Michael Evers and Catharine Evers *v.* Philadelphia Traction Company, Appellant.

*Negligence—Street railways—Motorman looking away from track—Province of court and jury.*

Where the evidence tended to show that a little child in plain view of the motorman of a traction company's car started to cross in the middle of a block some sixty feet away, that the motorman was not looking in front of him but in another direction and paid no attention to calls from persons on the sidewalk, and his car ran over the child; *held,* that the case was for the jury.

Neither at street crossings nor between them have street railway cars an exclusive right to the surface occupied by their tracks.  Rapid running over crossings is of itself negligence; between crossings it is not, but the car must be run with caution.

*Contributory negligence—Parents allowing infants on street—Province of court and jury.*

The plaintiffs' family was made up of the parents and eight children, and was in moderate circumstances.  The father peddled brooms, and at times manufactured them in the house where he lived.  The mother had only such aid in caring for the little children as the older ones could give.  On the day of the accident two of the daughters were at church and the father

was reading a newspaper in the house. The mother washed and dressed one, aged four and one half years old, and permitted him with a brother eight years old to go to a coal box on the street near by, where there was no railway track. While dressing another child she sent a daughter for both children. The eldest returned but the little one refused. She immediately sent for him again and he ran half a square and started to cross a street on which he was struck by the defendant's car which according to plaintiffs' testimony was being run at a rapid rate of speed; and the testimony was that the motorman was not watching the track. *Held*, (1) that contributory negligence could not be imputed to the child; (2) that it was proper to submit the alleged contributory negligence of the parents to the jury.

Argued April 10, 1896. Appeal, No. 231, Jan. T., 1896, by defendant, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1895, No. 599, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ. Affirmed. '

Trespass by parents for death of child caused by negligence of defendant. Before PENNYPACKER, J.

The facts sufficiently appear by the opinion of the Supreme Court.

The defendant presented a point: (3) Under all the evidence in this case the verdict must be for the defendant. Refused.

Verdict for plaintiffs for $2,500, reduced to $1,500, and judgment thereon.

*Error assigned* was refusal of above point.

*J. Howard Gendell*, with him *T. L. Vanderslice*, for appellant.—The mere fact of the incapacity of the child neither creates nor shields their liability : Johnson v. Reading City Pass. Ry. Co., 160 Pa. 647.

This principle has been frequently applied where a child or an animal has suddenly appeared on or close to the track : Chilton v. Traction Co., 152 Pa. 425 ; Flanagan v. Ry. Co., 163 Pa. 102 ; Traction Co. v. Bernheimer, 125 Pa. 615 ; R. R. Co. v. Spearen, 47 Pa. 300 ; Fisher v. R. R. Co., 126 Pa. 293. Even if the speed was excessive it would not subject the defendant to damages unless it was shown that it produced the accident : Goshorn v. Smith, 92 Pa. 435. Allowing a young child upon the streets of a city unprotected is presumptive evidence that he was exposed either voluntarily or negligently by his parents :

Glassey v. Ry. Co., 57 Pa. 172; Smith v. Ry. Co., 92 Pa. 450; Westerberg v. R. R. Co., 142 Pa. 470; Cauley v. Ry. Co., 95 Pa. 398; Johnson v. Ry. Co., 160 Pa. 647. In all the cases but one the child slipped unobserved into the street when it was supposed to be safe in the house: R. R. Co. v. Long, 75 Pa. 257; Woodbridge v. R. R. Co., 105 Pa. 460; Dunseath v. Traction Co., 161 Pa. 124; Lederman v. R. R. Co., 165 Pa. 118. In none of the cases cited was the father at home.

*Wendell P. Bowman*, for appellees.—In every one of the cases relied on by appellant the facts are distinctively different from those given in evidence in the present case. The facts in this case are almostly precisely the same as in Ry. Co. v. Pearson, 72 Pa. 169. In all the cases where the evidence was that the parents had not been in the habit of allowing children of tender age to run at large in the business streets of a big city, and that the children were not entirely alone and neglected by their parents, the question of negligence was left to the jury under proper instructions from the court: R. R. Co. v. Long, 75 Pa. 257; R. R. v. 'Lewis, 79 Pa. 33; Dunseath v. Traction Co., 161 Pa. 124; Lederman v. R. R., 165 Pa. 118.

OPINION BY MR. JUSTICE DEAN, July 15, 1896:

On Sunday forenoon, the 17th of September, 1893, Michael Evers, four and one half years old, the son of plaintiffs, was run over and killed by defendant's street car, on Front street between Bainbridge and Catherine in the city of Philadelphia. The plaintiffs lived at the corner of Meade and Swanson streets; the latter being parallel with Front and near to it; Meade is a narrow street or alley, running from Front to the river. The family of plaintiffs was made up of the parents and eight children. The mother had washed and dressed Michael, the deceased child, and then had permitted him to go with his elder brother Thomas, to a coal box on the lower side of Meade street, while she proceeded to wash and dress another of her children; about the time she had finished this one, two other of her children, girls, returned from church; on inquiry of them, she was told the two boys were still by the coal box; she then directed one of these to tell the boys to come home; one of the sisters immediately did as directed by the mother; the elder boy obeyed,

but the younger refused; the sister, on reporting to the mother, was immediately sent to bring him home; in this interval, however, the boy had left the coal box, and crossed over to the west side of Front street, a half square distant, and then started to run across again to the east side, when he was run over by defendant's car. The father peddled brooms with a horse and wagon, and at times manufactured them himself in the house where he lived; two of his daughters had employment and earned a living, but the family was in moderate circumstances. The parents brought suit against the defendant for damages, alleging, the death was caused by its negligence in running the car at an unusual speed; further, that when the child started from the west side of Front street to run across the track to the east side,,he was in plain view of the motorman for a distance of sixty feet; that, although witnesses on the sidewalk saw the danger and screamed to him, the motorman made no effort to stop the car, and appeared to be looking westward in another direction. There was much negative evidence that no warning of the approaching car was given. The motorman himself admitted he was a new hand on city streets, having been in employ of defendant only four days, and that this was his first trip without an instructor.

At the trial, the court below submitted the evidence to the jury to find: 1. Whether defendant was negligent. 2. Whether the parents were guilty of contributory negligence in not exercising proper watchfulness over their child.

The verdict was for plaintiffs, and we have this appeal by defendant, in which there is the single assignment of error, that the court should have peremptorily directed a verdict for defendant on two grounds: 1. Because there was no evidence of negligence on part of defendant, and 2. Because the evidence necessarily warrants no other inference than that of negligence on part of the parents.

As to the first proposition, it is based on the incorrect assumption that there was no evidence tending to show the motorman failed to fully perform his duty.

Eight witnesses testified, this child, in broad day, started from the curb, which is about seven feet from the rail, to cross the street when the car was fifty or sixty feet distant. Eugene O'Neill, an intelligent witness, a foreman of stevedores, testified

he was sitting at a side window of a house looking towards the west side of Front street, and about thirty to forty feet distant saw the child start from the curb to cross; then the car came into view, running rapidly towards the child; the witness hallooed to the motorman, who had been looking to the west and not in front of him, and who then turned his head to look in front, when he hallooed the second time, and just then the child was run over. This is in substance the testimony of several other witnesses who saw the child attempting to cross, and who saw the car when it approached him. Whether, under the circumstances, the motorman failed to exercise care, was a pure question of fact to be determined by the jury. That the car moved rapidly between crossings was not of itself evidence of negligence, but, clearly, rapid movement of a car on the street of a city requires a vigilant lookout by those in charge of it. The cars have the right to expeditiously transport passengers on the surface of the streets, but that gives them no exclusive right to the surface occupied by their tracks. Neither at crossings nor between them is the public right relinquished; it is only subordinated to that of the railway company. The fact that more caution should be exercised in running over crossings than on the street between them warrants no inference that the car can be run without caution except on approaching crossings; in the one case, rapid running is of itself evidence of negligence; in the other, it is not. Assume then, although running with comparative rapidity the car was not running at a negligent and therefore unlawful speed, the question still recurs, did the motorman exercise care according to the circumstances? If the witnesses be believed, he could, by merely looking in front of him, have seen the peril of the child, and could have saved its life by stopping the car. The case, on its facts, is almost the same as Schnur v. Traction Co., 153 Pa. 29, where we held the question of negligence was for the jury. In that case, the boy run over was six years old, and it was alleged the gripman did not see him, but there was evidence by a number of witnesses that they saw him when the car was sixty to seventy feet off. There was no reason why the gripman, whose special duty it was to see the track in front of him, should not have seen what those on the street saw.

The cases cited by appellant are not applicable to the evi-

dence, as here offered. In Chilton v. Traction Co., 152 Pa. 425, the child unexpectedly turned and ran into the car. In Flanigan v. R. W. Co., 163 Pa. 102, the driver of a horse car was attending strictly to his duty when a little girl seven years of age ran in front of the car, when he was doing his best to stop it, and did stop it but an instant too late to avoid the accident. As we have already noticed, the simple question here was, whether this motorman, by the exercise of care under the circumstances testified to, could have avoided this accident. That was fully and carefully submitted to the jury, and they have found defendant was negligent, and we must adopt that as the truth.

This being a child, contributory negligence cannot be imputed to him; if an adult had been injured in the attempt to cross a street railway track in front of a rapidly moving car, fifty to sixty feet distant, in charge of a negligent motorman, quite another question would have been raised.

As to the alleged negligence of the parents, we are of opinion the court committed no error in also submitting that question to the jury. Clearly, if the evidence were undisputed, that these parents had habitually permitted a child of this age to play on the street on which ran the trolley car, there could have been no recovery; or, if the evidence had shown they did not on that day, under the circumstances, exercise the care which a child of such tender years demanded, there could have been no recovery. But it will be noticed the family was a large one, and not in affluent circumstances; the mother had only such aid in caring for the younger children as those older could give; she washed and dressed this one, and permitted him with his brother eight years old to go to the coal box on Meade street, where there was no railway track; when she had completed her motherly duty to the second child, and one of the daughters had returned from church she sent for both children; the eldest returned; the deceased one refused; she immediately sent again for him, but before he was reached the caprice and heedlessness of childhood had led him to Front street, where he was killed. It was not for the court to say, from this evidence, the parents were negligent. We think the following instruction of the learned judge of the court below on this evidence was all that defendant had the right to ask:

" It is the duty of parents to look after their children of tender years and not to turn them out amid the dangers from accidents which occur upon crowded streets, and where trolley cars are running about, filled with the suggestions of danger to the lives and limbs of children. They ought to exercise reasonable and proper care, and one of the questions you are called upon to determine is, as to whether or not these parents did exercise such due care in looking after this child."

The assignment of error is overruled, and judgment affirmed.