## Andrew Karahuta *v.* The Schuylkill Traction Company, Appellant.

*Question for jury—Negligence—Street railways—Duty of motorman.*

Where there is evidence of the failure to ring the bell and of failure to perceive the approach of the child who was killed by a trolley car, and that the motorman was engaged in conversation with one of the passengers just before the accident and that his face was at one time turned away from the track, the case is for the jury on the question of the defendant's negligence.

*Negligence—Contributory negligence of parent—Question for jury.*

A father left his little child of two and one half years of age on the front steps of his house facing a public street where electric cars and wagons were passing, while he took a still smaller child in to its mother. There was a hand organ playing upon the opposite side of the street and the child was enjoined not to leave the step. While the father was absent the child had wandered upon the track and had been killed. The parents were people in humble circumstances and had no one else to take care of the children but themselves. *Held,* That the action of the parent was not such as compelled the court to pronounce it to be such contributory negligence on his part as to require the withdrawal of the case from the jury.

Argued Dec. 9, 1897. Appeal, No. 160, Oct. T., 1897, by defendant, from judgment of C. P. Schuylkill Co., Jan. T., 1895, No. 207, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Trespass by parent to recover damages for the death of his son, who was struck by car of the defendant company. Before SAVIDGE, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $565.50. Defendant appealed.

*Error assigned* was refusal of binding instructions for defendant.

*MacHenry Wilhelm,* for appellant.—The fact that a child is injured on a public street does not of itself impose liability on

the part of a driver or other person who has the vehicle in charge: Moss v. Traction Co., 180 Pa. 389; Johnson v. Railway Co., 160 Pa. 647.

The fact that a child is found in the streets affords a strong presumption of negligence on the part of the plaintiff: P. & R. R. R. Co. v. Long, 75 Pa. 257; Cauley v. Railway Co., 95 Pa. 398; Glassey v. Ry. Co., 57 Pa. 152.

*Chas. N. Brumm,* with him *George Dyson,* for appellee.—The principles of law that apply perfectly to this case are laid down in Henne v. Ry. Co., 1 Pa. Superior Ct. 311.

The refusal of binding instructions is justified by Dunseath v. Traction Co., 161 Pa. 124.

OPINION BY PORTER, J., January 18, 1898:

The only specification of error in this case is the refusal of the court below to give binding instructions to the jury to find for the defendants. This request is based upon the propositions first that the defendants were not guilty of negligence; and second, that the plaintiff, (the father of the child who was killed) was guilty of contributory negligence.

A decision of this case requires a consideration of the testimony. The plaintiff is a foreigner, having lived at the time of the accident, but seven years in this country. His residence was on Centre street in the borough of Mahanoy City. His family consisted of himself, his wife, his son Joseph, (who was killed) of the age of two years and a half, and a younger child about one year old. Centre street is about eighty feet wide from curb line to curb line and is traversed by the tracks of the defendant company, which operates an electrical street railway. The tracks are laid in the middle of the street. One of the termini of the line is in Mahanoy City east of the house occupied by the plaintiff. The car which killed the child, Joseph Karahuta, had passed eastward to the terminus and was on its return trip.

On August 7, 1894, the plaintiff left his house and proceeded directly across Centre street taking his two children, the younger in his arms and the older by the hand, to Hogan's store to be nearer an Italian who was there playing a hand organ. Having remained for a time listening to the music with a number of

other persons, adults and children, the plaintiff returned to his house with his two children. Having to go to the yard of the house for a necessary purpose for a few minutes, he allowed the older boy to remain on the front doorstep and took the younger child into the house, placing the latter in the care of its mother. On his return to the house, in a few minutes, he found the older child dead in the arms of its mother, having been killed during his absence by a car of the defendant company.

The allegations in respect to the negligence of defendants were that the car was moving at an extraordinary speed, that the motorman failed to ring his alarm bell, and that his attention was not being properly given to the management of his car.

The evidence does not satisfy us that there was any undue speed. The car seems to have been moving at a rate of not more than four to six miles an hour at the time of the accident. The power was not on and the car was drifting on a slight down grade.

As to the failure to give warning of approach it was shown that the accident occurred in the middle of the block and that the motorman had not rung his bell since leaving the street crossing to the east. While it is true that there is no necessity for a motorman to continually ring his bell, it is also true that when approaching a point where he could see that a number of children and others had congregated upon the street it may well have been his duty to give notice with his gong of the approach of his car, and had he done so in the present case it might have been that the warning would have prevented the little child from crossing the track.

In addition, however, there was evidence showing that the motorman was engaged in conversation with one of the passengers just before the accident, and that his face at one time was turned away from the track. This turning away was sought to be explained by the fact that a number of persons called out to him in warning to prevent the injury to the child. This is not a satisfactory explanation. If bystanders were able to see the impending accident and give warning, the motorman should have been able to see it himself, and if he had, the warning from others could not have diverted his attention nor would such warning have been necessary. There was in our opinion

sufficient evidence of the failure to ring the bell and of the failure to perceive the approach of the child, to require the case to go to the jury, on the question of the defendants' negligence.

The plaintiff allowed his little child of two and one half years of age to remain on the front step of the house facing on the public street where electric cars and wagons were passing. He allowed him to remain there for a few minutes with an injunction not to go away. The smaller child was left with the mother, who was in the front or back room of the house. The family were in moderate circumstances. The child had no caretaker but the parents. It is true that the attraction of a hand organ was within sight and hearing of the child. He had however, been permitted to see the organ at a nearer view. It is true that its presence may have been a temptation to the child to leave the doorstep in defiance of the father's injunction. We are, however, not prepared to say that the action of the parent in this case was such as to require a court to pronounce it to be such negligence on his part as to require the withdrawal of the case from the jury. The absence of the testimony of the mother upon this branch of the case is to be regretted, but it was explained by the statement at bar that she was dead at the time of the trial.

This case differs from Johnson v. Passenger Railway Co., 160 Pa. 647. There the mother stood at the open door of the house in conversation with relatives and permitted her child to pass her and escape into the street and be killed by a passing car. The facts in that case are tersely put by Mr. Justice DEAN, "a child twenty months old, an open door, a dangerous railway track, within a few feet of the open door, the mother standing in full view of the door and the track, and the further fact that it would probably take the little child as long to toddle from the door to the track before the eyes of its mother as it took the approaching car to come a square. Was this such care as was due from the mother to her child according to the circumstances?". The burden of that case fell upon the fact that the accident happened under the eyes of the parent under circumstances where she might have intervened after the child had started on its path to danger. This case comes rather within the ruling in Dunseath v. Pittsburg, etc., Traction Co., 161 Pa. 124, where it is said: "We cannot assent to the proposition that the court

.should have taken the case from the jury on the ground that
.the presence of the boy on the street under the circumstances ·
shown, constitute negligence on the part of the plaintiffs which
contributed to his death." Mr. Justice McCOLLUM quotes
.with approval in the same opinion the language of the Supreme
Court in P. & R. R. Co. v. Long, 75 Pa. 257, as follows : "To
suffer a child to wander on the street has the sense of *permit*.
If such permission or sufferance exist, it is negligence. This
is the assertion of a principle. But whether the mother did
suffer the child to wander is a matter of fact and is the subject
of evidence, and this must depend upon the care she took of
her child. Such care must be reasonable care, dependent on
the circumstances. This. is a fact for the jury." The opinion
in the recent case of Woeckner v. Erie Electric, etc., Co., 182
Pa. 182, applies this view of the law to facts similar in many
respects to those presented here.

The learned trial judge was thus compelled to send the case
to the jury. This he did in a clear and able charge, quite as
favorable to the defendants as they could have expected.

The judgment of the court below is therefore affirmed.