Goldberg et al. *v.* Philadelphia Rapid Transit Co., Appellant.

80

Argued December 4, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Marshall A. Coyne,* with him *J. J. K. Caskie,* for appellant.—The case should not have been submitted to the jury: Conklin v. Traction Co., 266 Pa. 164.

*William A. Gray,* for appellees.—The case was for the jury as to the minor plaintiff and motion for judgment n. o. v. was properly overruled: Melcher v. Stengel, 288 Pa. 522; Conklin v. Traction Co., 266 Pa. 164; Slavin v. Ry., 47 Pa. Superior Ct. 454; Drenberg v. Ry. & Light Co., 55 Pa. Superior Ct. 218; Hagos v. Transit & Light Co., 66 Pa. Superior Ct. 422; Tatarewicz v. Traction Co., 220 Pa. 560.

The case was for the jury as to the parents and motion for judgment n. o. v. was properly overruled: Dattola v. Burt Bros., 288 Pa. 134; Cover v. Transit Co., 290 Pa. 551; Karahuta v. Traction Co., 6 Pa. Superior Ct. 319; Cramer v. Aluminum Co., 239 Pa. 120.

OPINION BY MR. JUSTICE WALLING, January 6, 1930:
Tasker Street, extending through Philadelphia, in an easterly and westerly direction, is crossed at right angles by Sixth Street and, approximately four hundred feet to the east, by Fifth Street. The sidewalks on Tasker Street are twelve feet wide and the cartway is

of the width of twenty-six feet. In the center of the latter, the Philadelphia Rapid Transit Company, defendant, has a single track railway, leaving a space on either side of ten feet and four inches between the curb and the rail. On February 11, 1927, the plaintiffs' residence was on the northeast corner of Sixth and Tasker Streets, the kitchen being at the rear end of the house, facing the latter. The day was pleasant, and about noon the plaintiff, Mrs. Goldberg, put wraps on her son, Leonard, the minor plaintiff, then five and one-half years old, and let him go out on the kitchen steps, telling the maid, who was in the kitchen, to keep an eye on him. Then Mrs. Goldberg went upstairs to look after her work. Soon after, a blind beggar, who was well known in the neighborhood, came along on the south walk of Tasker Street, and Leonard, seeing him, ran across the street to put some pennies in his cup. This done, Leonard started to return home and just before clearing the track was struck and seriously injured by a westbound trolley car. This suit brought on account thereof, resulted in verdicts and judgments for the plaintiffs and the defendant has appealed.

In view of the verdicts, we must assume the facts as plaintiffs' proofs tended to establish them. So doing, we find no reversible error, for it appears that the trolley car came along at the speed of about eighteen miles an hour, that the street, including the track and the cartway to the south of it, was clear of obstructions, that the boy was in plain sight of the motorman from the time he left the curb until he was struck, that there was no other traffic moving in the street or anything to distract the motorman's attention. The boy walked about fifteen feet from the curb to where he was struck. The testimony for plaintiffs is not in harmony as to just how far the trolley car ran during that time. Some of plaintiffs' witnesses said the car was thirty feet away when the boy left the curb, one, somewhat confused, said two hundred feet and another, three-fourths of the

block, which would be more than that. As the testimony for the defense, including that of the motorman, was that he could stop the car within six feet, the exact distance it moved while the boy was in the cartway was not a vital matter. It is beyond dispute that had the motorman seen the boy while he was going from the curb to the track, the accident could have been averted. The motorman's testimony was that a milk wagon headed west stood in the south side of the street and hid the boy until he darted onto the track immediately in front of the trolley car, which was stopped within six feet. If so, it was a darting out case and there could be no recovery. Other evidence, however, denied the presence of the milk wagon, and its driver, called in rebuttal by plaintiffs, testified that it had turned south in Sixth Street before the accident. Whether the view was obstructed was a question of fact for the jury.

It is the duty of a motorman as his car moves forward to keep a constant watch of the cartway and track before him. To run down a small child in an unobstructed street in broad daylight is evidence of negligence, unless the child suddenly darts out into the track of the car. If the motorman failed to see the child, who was approaching the track in plain view, he was negligent, and if he saw the child in time to stop and failed to do so, he was equally negligent. As stated in Schnur v. Citizens' Traction Co., 153 Pa. 29, 31: "Very much depends upon the care of the gripman [speaking of cable cars]. He should always be on the alert, to avoid danger, and his attention never should be diverted from his duties. He should keep his eye constantly on the track before him." And "It is the duty of a motorman to keep a constant lookout ahead, and to have such control of his car as to avoid dangers ordinarily incident to its operation, and also to avoid such unusual and unexpected danger as he saw in time to avoid": Tatarewicz v. United Traction Co., 220 Pa. 560, 563; and see Jones v. Traction Co., 201 Pa. 344; Conner v. Pittsburgh Rys.

Co., 216 Pa. 609; Evers et al. v. Phila. Traction Co., 176 Pa. 376; Slavin v. N. Cambria St. Ry. Co., 47 Pa. Superior Ct. 454.

A child of such tender age, of course, could not be charged with contributory negligence. As to the parents, the case is different. It was their duty to exercise reasonable care to protect the child and keep it from danger. The fact, however, that the child was found momentarily in the cartway of the street did not, as matter of law, convict the parents of negligence: Crane et al. v. Sadler, 96 Pa. Superior Ct. 217; Karahuta v. Traction Co., 6 Pa. Superior Ct. 319; nor did the fact that the mother put on the child's wraps and let it go on the kitchen steps under the eye of the maid. The parents, Dr. and Mrs. Goldberg, had six children, one being younger than Leonard. The father, a dentist, was busy at his work, and the mother was attending to her manifold household duties and could not give all her attention to one child. There was no proof that the child was permitted to run upon the street and the presumption is that the parents gave it proper care. The question of contributory negligence by parents in the case of a child is one of fact and usually for the jury (Dattola et ux. v. Burt Bros., 288 Pa. 134; Cover v. Hershey Transit Co., 290 Pa. 551; Fineman v. P. R. T. Co., 42 Pa. Superior Ct. 379), as it was in the case at bar.

The question of the burden of proof of contributory negligence was discussed at the trial. In such case it is plaintiff's duty to make out a case free of contributory negligence. When this is done, the burden of proving such negligence is upon the defendant: Dattola et ux. v. Burt Bros., supra. A plaintiff is not required to prove negatively that he was not negligent: Bowman et al. v. Stouman, 292 Pa. 293. The defendant was certainly not harmed by the trial judge's statement to the jury that the burden of proving contributory negligence was upon the defendant, as he immediately with-

drew this instruction and told the jury that the burden of disproving contributory negligence was upon the plaintiff.

When a child of tender age is permanently disabled, it is not necessary to prove its earning power in order to submit that question to the jury as an element of damages. The question is for the jury under all the facts and circumstances of the case: O'Hanlon v. Pittsburgh Rys. Co., 256 Pa. 394; Kierkowsky v. Connell, 253 Pa. 566; Campbell v. Phila., 252 Pa. 387. Furthermore, in the instant case, the evidence was that the parents had expended $5,000 on account of the injuries to the child, so the verdict for them of $6,000 left no extravagant amount for loss of earnings.

The question of permitting a party to cross-examine his own witness, when his testimony proves adverse, and the extent and manner of such cross-examination, are largely matters for the discretion of the trial judge and the record here discloses no such abuse thereof as to call for our interference. To justify a reversal because of a ruling on evidence, it must not only be technically erroneous, but harmful. See Cramer v. Aluminum Co., 239 Pa. 120.

One of the minor plaintiff's legs was drawn under the car wheel and badly mutilated. The injury was followed by infection and the boy was some six months in the hospital. It resulted in the loss of a knee cap and a stiff leg, badly scarred and slightly shortened. The surgeon, in describing the injuries, was permitted, over the defendant's objection, to exhibit the injured leg to the jury. In this there was no error; such is common practice. "Where an issue as to personal injuries is involved, the injured person may be permitted to exhibit to the jury the wound or injury, or the member or portion of his body upon which such wound or injury was inflicted. Thus the court has permitted the exhibition of an ankle, a knee, a foot, a leg, an arm, a hand, an eyesocket, and various other parts of the body": 22 C. J.

788. At most it is a matter for the discretion of the trial judge: 38 Cyc. 1312.

The mere remark by plaintiffs' counsel, "that it is about time that somebody demonstrates to a jury how the Philadelphia Rapid Transit Company tries its cases," without more, while it might well have been omitted, was not of such prejudicial character as to require the withdrawal of a juror. What should be done in such case depends largely on the atmosphere of the trial and is generally a matter for the discretion of the trial judge: Carroll v. Hannan, 289 Pa. 65; Donahue v. Borough of Punxsutawney, 298 Pa. 77.

There was nothing unusual in the admission of the hospital bills, corroborating the testimony as to the expenses of the boy's sickness, nor in the admission of the city ordinance regulating the speed of trolley cars, and, as those matters are not suggested in the statement of questions involved, they will not be discussed.

The judgments are affirmed.