Donald Miller, a Minor, by Mildred Miller *v.* George Leljedal et al. Commonwealth of Pennsylvania, Department of Transportation, Appellant.

Donald Miller, a Minor, by Mildred Miller *v.* George Leljedal et al. George Leljedal, Appellant.

Argued February 5, 1982, before Judges Rogers, MacPhail and Doyle, sitting as a panel of three.

*David F. Snyder,* Deputy Attorney General, with him, *Herbert L. Olivieri,* Chief, Torts Litigation Unit, and *LeRoy S. Zimmerman,* Attorney General, for appellant, Commonwealth of Pennsylvania, Department of Transportation.

*W. Marshall Dawsey, Griffin & Dawsey,* for appellant, George Leljedal et al.

*Joan F. Shullo,* with her, *Kenneth Levitzky,* for appellee, Mildred Miller.

Opinion by Judge Doyle, January 26, 1983:

This is an appeal by George Leljedal (Appellant) and the Pennsylvania Department of Transportation

(Department) from a decision and order of the Court of Common Pleas of Bradford County granting Mildred Miller's (Appellee) motion for summary judgment as to a third party complaint filed against her by Appellant. We reverse and remand.

On February 26, 1978, at around 5:30 p.m., Donald Miller, Appellee's minor son, while crossing U.S. Route 220 near Monroeton, Pennsylvania, was struck and severely injured by a car driven by Appellant. Appellee subsequently brought an action in trespass on Donald's behalf against Appellant asserting that his negligence and recklessness caused the accident. Appellant, in turn, brought a third party complaint against Appellee which alleged that she was aware of her son's propensity to play in or near the highway and to cross it repeatedly to visit friends, even in the dusk or dark, and that she was also aware of a snowbank near the driveway of her residence which would obstruct a motorist's view of her child. The complaint thus asserted that Appellee had negligently supervised Donald and she alone was liable for his injuries or, in the alternative, liable for contribution in the event of a determination of joint and several liability. Also joined as a third party by Appellant's complaint was Leonard "Benny" Benjamin, the owner of the house where the Millers resided. The complaint charged him with knowledge of and responsibility for the snowbank, and imputed liability accordingly. In his answer to Appellant's complaint, Benjamin denied responsibility for the snowbank, charged that it was created by the Department, and then instituted a third party complaint in trespass against the Department.

On February 2, 1981, Appellee filed a motion for summary judgment claiming that Appellant's third party complaint against her should be dismissed because a parent's negligent supervision of her child is not actionable under Pennsylvania Law and Appellant

had therefore failed to state a cause of action upon which relief could be granted. Following a hearing, the common pleas court ruled that the Pennsylvania Supreme Court's abrogation of the doctrine of parental immunity in *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971), was not absolute, and did not make a parent's negligent supervision of a minor child actionable. The court accordingly granted Appellee's motion. The instant appeal followed. Both the Department and Appellant contend that the lower court erred as a matter of law.

It is axiomatic that summary judgment can be entered "only in the clearest of cases where there is not the slightest doubt as to the absence of an issue of material fact." *Leach v. Philadelphia Saving Fund Society,* 234 Pa. Superior Ct. 486, 492, 340 A.2d 491, 494 (1975). Moreover, "[t]he burden of demonstrating that no genuine issue of material fact exists and that one is entitled to judgment *as a matter of law,* is on the moving party, and the record must be examined in the light most favorable to the non-moving party." *Giannini v. Carden,* 286 Pa. Superior Ct. 450, 454, 429 A.2d 24, 26 (1981) (emphasis added).

In its opinion the common pleas court acknowledged that *Falco* did abrogate the doctrine of parental immunity for non-willful torts. The trial court believed, however, that application of *Falco* should be limited to circumstances such as gave rise to that case, *i.e.,* a parent's negligent operation of a motor vehicle in which his or her child was a passenger, which was, at least in part, responsible for an accident which caused injury to the child, because "the unique issues involved in the area of supervision of one's child did not present themselves." We disagree.

In so doing, we are not unmindful of the considerations advanced in other jurisdictions, as argued by Appellee, in favor of restricting abrogation of the doc-

trine. For example, in *Gelbman v. Gelbman*, 23 N.Y. 2d 434, 245 N.E. 2d 192 (1969), the Court of Appeals of New York, in abolishing parental immunity, noted that it was not establishing new intrafamilial liabilities. Thus, by implication, the decision was limited to allowing suits between parents and children where there would have been a cause of action except for the parent-child relationship. Subsequently, that same court, in *Holodook v. Spencer*, 36 N.Y. 2d 35, 324 N.E. 2d 338 (1974), held that a child had no cause of action against his or her parent for negligent supervision because, prior to the recognition of the doctrine of parental immunity in New York, it was not a tort actionable by the child and, for reasons of public policy, the court was not persuaded that it now should be.[1]

In its policy discussion, the *Holodook* court, with respect to the potential impact of allowing a child to sue a parent for negligent supervision, stated:

> We can conceive of few, if any, accident injuries to children which could not have been prevented, or substantially mitigated, by keener parental guidance, broader foresight, closer protection and better example. Indeed, a child could probably avoid most physical harm were he under his parents' constant surveillance and instruction, though detriment more subtle and perhaps more harmful than physical injury might result. If the instant negligent supervision claims were

---

[1] *Holodook v. Spencer*, 36 N.Y. 2d 35, 324 N.E. 2d 338 (1974), was a consolidation on appeal of three cases where the decision of the trial court was grounded on the existence or nonexistence of a cause of action by a minor against a parent for negligent supervision. Two of the cases involved actions brought directly by the child against the parent. The third case involved a third party action by a tortfeasor for contribution and apportionment of the nature of the claim brought by Appellant in the case at bar.

allowed, it would be the rare parent who could not conceivably be called to account in the courts for his conduct toward his child . . . .

*Id.* at 45-46, 324 N.E.2d at 343. The Court went on to express the fear that, while children whose parents were covered by insurance could likely expect to have their claims against others pursued regardless of whether there existed a cause of action for a parent's negligent supervision, to allow such an action could create a situation where uninsured parents would refuse to seek legal redress for their child's injuries because of their vulnerability to third party suits for contribution, such as brought in the case at bar. Moreover, it was predicted by the Court that because it was impractical to separate parent and child as economic entities, third party suits for contribution based on negligent parental supervision would in reality severely diminish a child's recovery if the parent were uninsured and the resulting economic hardship would ultimately lead to family discord and strife.[2] Finally, the court in \*Holodook* commented that the reasonable man standard, while suitable to the balance of tort law, is inappropriate in the context of the parent-child relationship. The rationale for so commenting was that supervision is uniquely a matter for the exercise of parental judgment and that the application of a standardized norm could ''circumscribe the wide range of discretion a parent ought to have in permitting his

---

[2] By way of contrast, the court did not consider these factors a bar to the abrogation of parent-child tort immunity in cases where suit could have been brought except for the doctrine because, with the advent of factors such as compulsory motor vehicle insurance, it was considered highly likely the parent would be insured for those circumstances and the child's recovery would not be diminished. The court was unwilling to distinguish between third party suits for contribution and direct claims against the parent by the minor child, despite the fact that the latter situation would likely arise only if the parent was insured.

child to undertake responsibility and gain independence.'' *Id.* at 50, 324 N.E. 2d at 346.

Many of the sentiments and legal arguments expressed in *Holodook* have formed the basis for similar holdings and/or restrictions on the abrogation of parental immunity by courts in other states. *See Pedigo v. Rowley,* 101 Idaho 201, 610 P.2d 560 (1980); *Schneider v. Coe,* 405 A.2d 682 (Del. Supreme Ct., 1979); *Goller v. White,* 20 Wis. 2d 402, 122 N.W. 2d 193 (1963); *contra Gibson v. Gibson,* 31 Cal. 3d 914, 479 P.2d 648 (1971); *Anderson v. Stream,* 295 N.W. 2d 595 (Minn. Supreme Ct., 1980).

In Pennsylvania, however, the situation differs from that facing the New York Court of Appeals in *Holodook* in two key respects. First, notwithstanding the common pleas court holding to the contrary, *Falco,* in abrogating parent-child tort immunity, did so *without qualification,* unlike the New York court in *Gelbman* or the Wisconsin court in *Goller v. White.*[3] This is best evidenced by the statement in *Falco* that ''the doctrine of parental immunity has *no* rational purpose today, and henceforth *will not be recognized* in Pennsylvania.'' *Id.* at 376, 282 A.2d at 353 (emphasis added).[4] Secondly, recognizing a child's right to sue,

---

[3] In *Goller v. White,* 20 Wis. 2d 402, 122 N.W. 2d 193 (1963), the Wisconsin Supreme Court abrogated the doctrine of parent-child tort immunity but specifically retained the doctrine for situations where the alleged negligence involved the exercise of parental authority over the minor child or where the allged negligence involved the exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental care, and other care.

[4] It was this language which prompted Justice Pomeroy to write a concurring opinion in which he espoused the adoption of those exceptions to abrogation of the doctrine set forth by *Goller v. White,* 20 Wis. 2d 402, 122 N.W. 2d 193 (1969), as discussed in footnote 3 above. Justice POMEROY's concurrence was the only effort by any member of the Court to limit the scope of the Court's decision.

or a tortfeasor's right to seek contribution from a parent for negligent supervision, is not creating a liability where none previously existed. It has long been the law in Pennsylvania that parents have a duty to exercise reasonable care to protect their children and keep them from danger. *Goldberg v. Philadelphia Rapid Transit Co.,* 299 Pa. 79, 149 A. 104 (1930). Accordingly, the Pennsylvania Supreme Court, in *Reardon v. Wilbur,* 441 Pa. 551, 272 A.2d 888 (1971) affirmed a dismissal of a tortfeasor's attempt to join as an additional defendant a father who was alleged to have negligently supervised his minor son so as to allow the child to wander into a road where he was struck by tortfeasor's car, *not* on the grounds that the tortfeasor had failed to state a legally cognizable cause of action but rather because the tortfeasor had failed to set forth facts sufficient to establish negligence of the parent. The court was careful to point out that the tortfeasor had failed to allege that the parent had knowingly permitted the child to cross the street where he was struck, unlike the allegations made by Appellant in the case at bar.

Thus, viewing the absolute abrogation of parent-child tort immunity in *Falco* together with the discussion of the Supreme Court in *Reardon* and the duty of a parent to a minor child as established by cases such as *Goldberg,* this Court concludes that negligent supervision of a minor by a parent is not incognizable as a cause of action as a matter of law.

Because we have so held, it is necessary to point out that we believe the appropriate standard by which to gauge a parent's supervision of his or her child is that of the reasonable *parent.* As the Supreme Court of California noted in *Gibson*[5]:

---

[5] In *Gibson v. Gibson,* 3 Cal. 3d 914, 479 P.2d 648 (1971), the Supreme Court of California abrogated that state's doctrine of parent-child tort immunity. In so doing it specifically rejected the

> [T]he parent child relationship is unique in some aspects and . . . traditional concepts of negligence cannot be blindly applied to it. Obviously, a parent may exercise a certain authority over a minor child which would be tortious if directed toward someone else. For example, a parent may spank a child who has misbehaved without being liable for battery . . . .

*Id.* at 921, 479 P.2d at 652. That court went on to state, and we agree, that

> [i]n short, although a parent has the prerogative and the duty to exercise authority over his minor child, this prerogative must be exercised within reasonable limits. The standard to be applied is the traditional one of reasonableness, but viewed in light of the parental role. Thus, we think the proper test of a parent's conduct is this: what would an ordinarily reasonable and prudent *parent* have done in similar circumstances?

*Id.* at 921, 479 P.2d at 653 (emphasis in original).

Such a standard leaves ample room for parental discretion with respect to the supervision and raising of children and at the same time establishes parameters beyond which a parent may not act negligently towards his or her child with impunity. *Anderson.* It does not

---

limitations imposed by *Goller v. White,* 20 Wis. 2d 402, 122 N.W. 2d 193 (1963), *see* footnote 3 above, for being too susceptible to the drawing of arbitrary distinctions and for the implication that "within certain aspects of the parent-child relationship, the parent has carte blanche to act negligently toward his child." *Gibson,* at 921, 479 P.2d at 652-653. A similar rationale was used by the Supreme Court of Minnesota in *Anderson v. Stream,* 295 N.W. 2d 595 (Minn. Supreme Ct. 1980) which adopted the reasonable parent standard set forth in *Gibson* and specifically overruled that court's prior decision in *Silesky v. Kelman,* 281 Minn. 431, 161 N.W. 2d 631 (1968), where the Court had abrogated parent-child tort immunity subject to limitations similar to those set forth in *Goller.*

require that a parent live up to some idealized picture of a model father or mother. A mere misjudgment in supervising one's child would not necessarily constitute a tortious breach of duty. In determining whether the bounds of reasonable behavior have been transgressed, all of the relevant facts and circumstances would have to be considered. In a supervision situation, among the foremost are bound to be the existence of the relation of parent and child; the practical responsibilities, expectations and limitations that flow therefrom; and the judgemental nature of the decisions a parent must make in functioning in that capacity.

Without developing this point *in extenso,* the weight which a court or jury will ascribe to each of these and other related factors will depend on the facts peculiar to the particular case. For example, aside from the facts relating to the negligence itself, such variable matters as the age, mental and physical health, intelligence, aptitudes and needs of the child involved; the presence in the family of other children competing for parental time and attention; and the economic, social and physical environment in which the parental conduct occurs, all may be expected to play a part.

*Anderson* at 599 (quoting *Nolechek v. Gesuale,* 46 N.Y. 2d 332, 346, 385 N.E. 2d 1268, 1277 (1978) (FUCHSBERG, J., concurring)).

Whereas the court of common pleas herein was incorrect as a matter of law in its granting of summary judgment to Appellee and because the record in this case establishes a genuine issue of material fact, *i.e.,* whether Appellee afforded her minor child Donald the supervision of a reasonable parent under the circumstances, we hereby enter the following

## ORDER

Now, January 26, 1983, the decision and order of the Court of Common Pleas of Bradford County, No. 79-4945, dated March 20, 1981, is hereby reversed and the matter is remanded for further proceedings consistent with this opinion.

Judge MENCER did not participate in the decision in this case.