# Frazier v. State Farm Automobile Insurance Co.

C.P. of Philadelphia County, no. 91-11-4082.

*Joel M. Lieberman,* for plaintiff.
*James T. Moughan,* for defendant.

MIRARCHI, *S.J.,* August 14, 1996—

## I. FACTS

Plaintiff, Pinkney Frazier, and defendant, State Farm, in this matter have filed cross-motions for summary judgment. The parties have agreed to a stipulation of the following facts:

(1) Plaintiff, Pinkney Frazier, was involved in a motor vehicle accident on July 10, 1988, with a motorist who was uninsured and who was operating an uninsured motor vehicle.

(2) Defendant, State Farm Automobile Insurance Company, had issued two insurance policies to plaintiff, each providing uninsured motorist coverage limits of $15,000 per person, amounting to total uninsured motorist coverage of $30,000.

(3) The insurance policies were in force on the date of plaintiff's accident.

(4) Plaintiff presented an uninsured motorist claim to State Farm as a result of the accident.

(5) Plaintiff demanded payment of the full limits of coverage under the two insurance policies in compensation for the alleged injuries suffered by plaintiff in the car accident.

(6) State Farm declined to tender its policy limits of $30,000 to plaintiff.

(7) Plaintiff never reduced his settlement demand of the $30,000 limits.

(8) Defendant never made any offer of settlement with reference to the uninsured motorist claim of plaintiff.

(9) Pursuant to the insurance policy between the parties, an arbitration panel was selected to determine the amount of uninsured motorist benefits, if any, to which plaintiff was entitled in compensation for his alleged injuries.

(10) Plaintiff selected William Averona, Esquire as arbitrator.

(11) Defendant selected Norton Freedman, Esquire as an arbitrator.

(12) Arthur S. Cavaliere, Esquire was appointed as neutral arbitrator by court order on December 29, 1990.

(13) The uninsured motorist arbitration was held on August 22, 1991.

(14) On October 10, 1991, the arbitration panel entered an award in favor of plaintiff and against defendant in the amount of $22,000.

(15) The arbitration award has been paid to plaintiff by State Farm.

(16) Plaintiff has brought the instant action seeking damages based upon the claim that defendant acted

in bad faith by declining to make an offer to settle the uninsured motorist claim prior to the arbitration.

(17) Defendant contends that it had no duty to make a settlement offer to plaintiff at any time relevant to this lawsuit and, therefore, did not act in bad faith.

(18) The parties intend to submit cross-motions for summary judgment to the court for resolution based upon the above stipulated facts.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is granted "when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits considered together, reveal no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Baesel v. New Boulevard Baking Company Inc.,* 410 Pa. Super. 591, 593, 600 A.2d 610, 612 (1991); Pa.R.C.P. 1035.

While a motion for summary judgment should be considered in a light most favorable to the non-moving party, *Miller v. Leljedal,* 71 Pa. Commw. 372, 455 A.2d 256 (1983), for purposes of ruling upon a motion for summary judgment, a fact is "material" only if it directly affects the disposition of the case. *Allen v. Colautti,* 53 Pa. Commw. 392, 417 A.2d 1303 (1980). Each party in the present case claims that there are no genuine issues of material fact in dispute and each claim that they are entitled to judgment as a matter of law.

## III. ISSUES PRESENTED

The court is called upon here to answer two questions:

(1) Does 42 Pa.C.S. §8371, which gives an insured the right to collect damages from his insurance company for bad faith in the handling of a claim, give plaintiff a cause of action independent of the underlying un-

insured motorist claim once that claim has been settled through an arbitration hearing, and

(2) if so, did State Farm's actions in this case subsequent to the filing of plaintiff's claim establish a pattern of bad faith conduct in its dealings with the plaintiff?

A careful review of the law involved in this case leads to the conclusion that the answer to both of these questions is yes. Therefore, the court properly granted plaintiff's motion for summary judgment and denied defendant's motion for summary judgment.

### A. *Plaintiff Does Have a Valid Cause of Action Under 42 Pa.C.S. §8371*

Plaintiff does have a valid cause of action under 42 Pa.C.S. §8371 which states:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorney fees against the insurer."

Defendant contends that section 8371 does not apply here because an arbitration proceeding does not constitute an "action" within the meaning of Pennsylvania law. However, this argument is without merit. Section 8371, which allows an insured to file a claim for damages against an insurer who acts in bad faith, is a Pennsylvania statute enforceable only by a court proceeding. Thus, any claim filed under section 8371 is necessarily an

"action." To hold otherwise would render the statute meaningless and would allow an insurance company to act in bad faith with regard to any insurance contract that contains an arbitration clause. This could not have been the intent of the legislature. Therefore, any claim brought under section 8371 is an "action" within the meaning of Pennsylvania law.

Furthermore, several Pennsylvania cases recognize that a claim under section 8371 for bad faith conduct is an action independent of the underlying insurance claim. *Margolies v. State Farm Fire and Casualty Company,* 810 F. Supp. 637 (1992); *Kauffman v. Aetna Casualty and Surety Company,* 794 F. Supp. 137 (E.D. Pa. 1992); *Colantuno v. Aetna Insurance Company,* 980 F.2d 908 (1992).

Defendant's memorandum of law in support of their motion for summary judgment, states that courts in other jurisdictions have only recognized claims similar to plaintiff's when there was explicit legislative authority allowing them to do so. Defendant cites a Florida statute enacted in 1982 to expressly permit causes of action to be filed against insurers for bad faith refusal to settle claims. Defendant then concludes that since section 8371 does not specifically provide for the situation of bad faith in refusing to settle a claim, that it cannot be applied under those circumstances.

This reasoning is incorrect. The plain language of the statute is clear evidence that section 8371 was intended to apply in any situation involving an insurance contract where a court finds that an insurance company has acted in bad faith towards its insured in any aspect of the dealings between the two parties.

Thus, section 8371 does provide an insured with an independent cause of action against his insurer for alleged bad faith conduct.

## B. *Defendant's Actions Do Constitute a Pattern of Bad Faith in Its Dealings With Plaintiff*

40 P.S. §1171.5(a)(10)(VI) sets forth the requirement that insurance companies must "attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which the company's liability under their policy has become reasonably clear."

In this case, there can be little doubt that State Farm's liability did in fact become reasonably clear to them early on in these proceedings for two reasons. First, it is undisputed that plaintiff had two policies in effect at the time of the accident, each providing him with $15,000 of uninsured motorist coverage. Second, John Thomas, the driver of the other vehicle giving rise to the claim, admitted that he did not have insurance at the time of the accident. This fact was apparently confirmed in a letter sent by State Farm to plaintiff's counsel in October of 1988. Therefore, State Farm did have an obligation to make a good faith attempt to settle plaintiff's claim.

Despite this fact, the chain of events following plaintiff's automobile accident on July 10, 1988, is replete with examples of conduct by State Farm which together exhibit a clear pattern of bad faith toward plaintiff.

First, State Farm adamantly refused to negotiate the settlement of the meritorious uninsured motorist claim even though liability was admitted.

While it is true that the policy in question gives State Farm the right to proceed to arbitration in cases where, after negotiation, the parties cannot reach an agreement on the amount of uninsured motorist benefits due to a claimant, no such dispute can be said to have arisen here. Plaintiff's demand of the full $30,000 limit

on his policies did not relieve State Farm of their obligation to attempt in good faith to settle the claim.

In cases such as this one where defendant's liability under the insurance contract was never in serious question because of the unequivocal evidence available as to the uninsured status of the tort-feasor, the insurer must deal in good faith with the insured in negotiating the payment of benefits. To allow insurance companies to arbitrate every claim brought before them regardless of the claim's merits would destroy the confidence held by the public that they will be dealt with fairly by their own insurance carrier.

Second, the defendant refused to admit that this was an uninsured motorist claim even after the driver of the other car involved in the accident admitted that he did not have insurance and after State Farm's own adjuster recognized that fact in a letter dated October 31, 1988.

The apparent intention of the refusal was to force plaintiff to litigate each and every possible issue involved, thus prolonging the settlement process and increasing the possibility that plaintiff would drop the claim out of sheer frustration or due to the exhaustion of the resources necessary for him to pursue the claim.

Third, defendant chose Norton Freedman, Esquire, who was unavailable for many months, thus delaying the arbitration. The appointment of Freedman by State Farm essentially prevented the timely resolution of the claim.

Defendant contends that this court must find that plaintiff's allegation that the selection of Norton Freedman as arbitrator was in bad faith is without merit based on the Pennsylvania Superior Court's decision in *Land v. State Farm Mutual Insurance Co.,* 410 Pa. Super. 579, 600 A.2d 605 (1991). In *Land,* as in this

case, State Farm selected Freedman as arbitrator in an uninsured motorist dispute. Plaintiff in that case appealed the arbitration panel's decision and sued to have it set aside based on the fact that Freedman was a partial, biased party. The court denied plaintiff's appeal on grounds that the contacts proven to exist between Freedman and State Farm at that time were not enough to show that Freedman was not a neutral arbitrator.

However, *Land* can be distinguished from the case now before us because plaintiff alleges not that Freedman is biased, rather State Farm appointed Freedman to delay the resolution of a meritorious claim. Because State Farm repeatedly appoints Freedman, and because there is sufficient evidence to show that Freedman consistently delayed arbitration, the selection of Freedman as arbitrator was in bad faith.

## IV. CONCLUSION

When an uninsured motorist claim is resolved with the limits plaintiff had demanded, there can still be a finding of bad faith as a matter of law under 42 Pa.C.S. §8371 even though defendant had a contractual right to insist on arbitrating the entitlement to damages and the amount of damages under the insurance policy. Thus, plaintiff does have a valid cause of action even though the uninsured motorist claim has already been settled through arbitration and, therefore, plaintiff's motion for summary judgment is granted.

Furthermore, plaintiff is entitled to recover damages from State Farm as a result of defendant's bad faith conduct in refusing to negotiate settlement of the meritorious claim despite admissions of liability and available insurance coverage and in selecting Norton Freedman, Esquire, as defense arbitrator for the purpose of delaying the ultimate hearing of the claim from taking

place. Accordingly, plaintiff's motion for summary judgment was properly granted.

## ORDER

And now, to wit, August 14, 1996, after a finding in favor of plaintiff, Pinkney Frazier, and against defendant, State Farm Automobile Insurance Company, and thereafter an assessment of damage hearing was conducted by the undersigned, it is ordered and decreed damages are assessed in favor of plaintiff, Pinkney Frazier and against defendant, State Farm Automobile Insurance Company in the amount of $27,500. Judgment is entered accordingly.